IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **GINO'S AWARDS INC, ET AL.,** | Case No. 1:25-cv-00359-PAB |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **AKF INC. D/B/A FUNDKITE, ET AL.,** | **MEMORANDUM OPINION & ORDER** |
| **Defendants.** | |

Pending before the Court is Defendant AKF Inc. d/b/a Fundkite's ("Defendant" or "Fundkite") Motion to Dismiss for Lack of Personal Jurisdiction ("Motion"). (Doc. No. 2.) For the following reason, Defendant's Motion is GRANTED.

I.  **Factual Allegations**

Plaintiffs Gino's Awards Inc ("Gino's Awards") and Gino Zavarella ("Zavarella") (collectively, "Plaintiffs") set forth the following factual allegations in their Complaint. (Doc. No. 1-1.)

Gino's Awards Inc is a corporation formed under the laws of the State of Ohio and corporation resident in the State of Ohio with its principal place of business and its operations within the State of Ohio. (*Id.* at PageID #8.) Zavarella is a resident of the State of Ohio and conducts his business in the state. (*Id.*) Plaintiffs operate in Cuyahoga County. (*Id.*) According to Plaintiffs, "Defendants[1]

---

[1] Plaintiffs sued four Defendants: (i) Fundkite; (ii) Ethan Brown; (iii) ECP Business Capital; and (iv) Suncoast Lending. (*See* Doc. No. 1-1 at PageID #7.) Plaintiffs do not differentiate between these Defendants in their Complaint, and instead merely refer to them as "Defendants." (*See generally* Doc. No. 1-1.) As explained further below, all Defendants except for Fundkite have since been dismissed from the case.

all do business in the State of Ohio and, did, in fact, in this case, voluntarily and for their own profit, conduct business within this state ….." (*Id.*)

Plaintiffs allege that "Defendants did, voluntarily and for their own profit, make an initial funding offer and a secondary offer contingent upon satisfactory performance of the initial funding offer." (*Id.*) "Defendants' offer and contract caused Plaintiffs to accept an initial funding offer and a secondary offer contingent upon satisfactory performance of the initial funding offer."[2] (*Id.*) According to Plaintiffs, "[t]he [D]efendants made a representation to Plaintiffs, namely and specifically, that should Plaintiffs take an initial MCA [sic]. An MCA being A [sic] merchant cash advance; an alternative type of business financing that advances a lump-sum payment based on future credit or debit card sales." (*Id.* at PageID #9.)

Plaintiffs allege that they "did take the aforementioned MCA," and that "Plaintiffs were promised that, upon the conditions in the MCA contract being met, they would qualify for and receive a line of credit." (*Id.*) "Defendants further represented that the MCA could be paid off with the line of credit once the line of credit was established." (*Id.*) According to Plaintiffs, "Defendants presented a contract to Plaintiffs outlining the MCA and line of credit arrangement." (*Id.*)

Plaintiffs allege that they were "fraudulently induced to enter into the arrangement with Defendants upon the false and fraudulent representations of Defendants." (*Id.*) Plaintiffs also allege that "Defendants made the false representation knowing it was false or with such utter disregard and recklessness for the truth or falsity that a fact finder may infer that the representation or omission was knowingly false," and that "Defendants intended to mislead Plaintiffs by having Plaintiffs rely upon

---

[2] In paragraph 2 of their Complaint, Plaintiffs allege the incomplete phrase: "business funding to Plaintiffs." (Doc. No. 1-1 at PageID #8.)

2

the false representations and omissions and Plaintiffs reliance was justifiable and not unreasonable." (*Id.*)  According to Plaintiffs, "Plaintiffs reliance on the Defendants representations and omissions was the proximate cause of injuries to Plaintiffs [sic]."  (*Id.*)

Plaintiffs allege that "Defendants made false statements and purposeful omissions concerning the business relationship between Defendants and Plaintiffs and thus made a material misrepresentation concerning the ability of Plaintiffs to obtain the aforementioned line of credit and the contract therefore," and that "Defendants knew, from the written contract and the failure of it to be properly entered into the DocuSign system, of the misrepresentation."  (*Id.*)  According to Plaintiffs, "Defendants intended for Plaintiffs to rely on this misrepresentation as they presented the irregular written contract to Plaintiffs," and "Plaintiffs did, in fact, rely upon the irregular written contract and did so justifiably as a necessary step in acquiring the subsequent line of credit … [and] ha[ve], in fact, suffered damages as a result of the misrepresentation on the part of the Defendants." (*Id.* at PageID #10.)

"In the alternative to the previous counts, Plaintiffs make claim for breach of contract."  (*Id.*)  Plaintiffs allege that "Defendants offered a financial arrangement whereby Plaintiff would borrow money first as an MCA then, after meeting certain conditions, qualify for and receive a line of credit." (*Id.*)  According to Plaintiffs, "Defendants did create the offer and set the terms for the aforementioned financial arrangement and create a contract for the MCA and an attendant contract for the line of credit[,] [and] did cause both contracts to be delivered to Plaintiffs."  (*Id.*)  Plaintiffs allege that they "accepted the offer(s) made by Defendants … [and] performed in all aspects of the contracts specifically to include the conditions precedent to receive the line of credit."  (*Id.*)  Plaintiffs also allege that "[u]pon notifying Defendants of fulfillment of the conditions precedent to receive the line

3

of credit Defendants refused to create and service the line of credit due to Plaintiffs." (*Id.*) According to Plaintiffs, "Defendants did, willingly and for their own benefit, engage in breach of contract by failing to honor the contract created and offered by themselves … [and] Plaintiffs have, as a direct result of the breach of contract by Defendants, suffered and continue to suffer damages." (*Id.*)

Finally, Plaintiffs attach an exhibit to their Complaint titled "Loan and Credit Line Agreement." (*Id.* at PageID #14–15.) Fundkite is not a party to the agreement. (*See id.* at PageID #15.)

## II.     Procedural History

On January 22, 2025, Plaintiffs filed their Complaint in the Cuyahoga County Court of Common Pleas. (*See* Doc. No. 1-1 at PageID #6.) Plaintiffs' Complaint asserts three state law claims: (i) Fraud and Fraudulent Inducement; (ii) Material Misrepresentation; and (iii) Breach of Contract. (*Id.* at PageID #8–10.) On February 21, 2025, Fundkite filed a Notice of Removal and removed the action to this Court. (Doc. No. 1.) That same day, Fundkite filed the present Motion seeking to dismiss the action for lack of jurisdiction. (Doc. No. 2.) Plaintiffs did not file an opposition to Fundkite's Motion. On April 1, 2025, Fundkite filed a Reply in Support of its Motion ("Reply") asserting that Plaintiffs' failure to file an opposition constitutes a waiver to the arguments contained in Fundkite's Motion. (Doc. No. 6.)

On May 23, 2025, the Court issued an Order to Show Cause for Plaintiffs' lack of service on Defendants Ethan Brown, ECP Business Capital, and Suncoast Lending. (Doc. No. 7.) Plaintiffs did not respond to the Order. Accordingly, on June 9, 2025, the Court dismissed those three Defendants from this action. (Doc. No. 8.)

### III. Standard of Review

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, "[t]he party seeking to establish the existence of personal jurisdiction bears the burden to establish such jurisdiction.'" *Beydoun v. Wayaniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (quoting *Days Inns Worldwide, Inc. v. Patel,* 445 F.3d 899, 904 (6th Cir. 2006)). If a court rules on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction prior to trial, "it has the discretion to adopt any of the following courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion." *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005). "[T]he decision whether to grant discovery or an evidentiary hearing before ruling on a 12(b)(2) motion is discretionary." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 Fed. Appx 425, 434 (6th Cir. 2006).

In the instant case, neither party indicates a hearing is necessary. Upon review, the Court concludes that a hearing will not assist the Court and that Fundkite's Motion may be resolved based on the Complaint and the parties' exhibits. *See Nicholson v. Jayco, Inc.*, 2016 WL 5463215, at *4 (N.D. Ohio Sept. 29, 2016) ("The Court also considers various exhibits submitted by the parties in connection with MHS' [12(b)(2)] motion.").

Where, as here, the district court rules on a jurisdictional motion to dismiss made pursuant to Rule 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). To defeat such a motion, a plaintiff need only make a *prima facie* showing of jurisdiction, which can be done merely through the complaint. *See Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020). The burden then shifts to the defendant, whose motion to

dismiss must be properly supported with evidence. *Id*. Once the defendant has met the burden, it returns to the plaintiff, who may no longer "stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id*. (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).

A court disposing of a Rule 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal but may consider a defendant's undisputed factual assertions. *See CompuServe*, 89 F.3d at 1262; *Theunissen*, 935 F.2d at 1459; *NTCH-West Tenn, Inc. v. ZTE Corp.*, 761 Fed. Appx 485, 488 (6th Cir. 2019). "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff [] alleges collectively fail to state a *prima facie* case for jurisdiction." *CompuServe*, 89 F.3d at 1262; *see also Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997).

"In a diversity case, a federal court can exercise personal jurisdiction over a defendant if jurisdiction is (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Tharo Systems, Inc. v. Cab Producktechnik GMBH & Co., KG,* 196 Fed. Appx 366 (6th Cir. 2006). Jurisdiction under Ohio's Long Arm Statute is governed by Ohio Rev. Code § 2307.382, and the due process inquiry requires determining "whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen*, 935 F.2d at 1459 (quoting *Int'l Shoe Co. v. State of Wash.,* 326 U.S. 310, 316 (1945)).

**IV.     Analysis**

In its Motion, Fundkite submits that its contract with Plaintiffs contains a forum selection clause that renders personal jurisdiction improper here.  (Doc. No. 2 at PageID #23.)  In its Motion, Fundkite attaches an exhibit titled "Purchase and Sale of Future Receipts"[3] containing, in relevant part, a forum selection clause as follows:

> "Any suit, action, or proceeding arising out of any disputes between the SELLER [Plaintiffs], Guarantor(s) and the BUYER [Fundkite], its affiliates agents, attorneys, and assigns herein, or arising out of the Agreement hereunder, or the interpretation, performance or breach hereof, shall if BUYER [Fundkite] so elects, be instituted in any court sitting in New York State, (the "Acceptable Forums").  SELLER [Plaintiffs] and each Guarantor(s) agree that the Acceptable Forums are convenient to it/them and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to jurisdiction or venue.  Should such proceeding be initiated in any other forum, SELLER [Plaintiffs] and each Guarantor(s) waive any right to oppose any motion or application made by BUYER [Fundkite] to transfer and/or dismiss such proceeding."

(Doc. No. 2-1 at PageID #36.)  Fundkite contends that this forum selection clause is "mandatory" rather than "permissive," and thus, maintains that this Court lacks personal jurisdiction.  (Doc. No. 2 at PageID #24.)  Accordingly, Fundkite asserts that the forum selection clause mandates that any action be brought in a New York court, and that Plaintiffs waive any right to oppose any motion made by Fundkite to transfer and/or dismiss the proceeding.  (*Id.*)  Finally, Fundkite argues that the Court also lacks personal jurisdiction under the due process clause because Plaintiffs have failed to allege facts sufficient to establish general or specific jurisdiction.  (*Id.* at PageID #25.)

---

[3] Unlike the agreement attached to Plaintiffs' Complaint to which Fundkite was not a party, this agreement attached to Fundkite's Motion indicates that it is made between AKF Inc DBA Fundkite and Gino's Awards, Inc.  (*See* Doc. No. 2-1 at PageID #29.)

"A forum selection clause should be upheld absent a strong showing that it should be set aside."[4] *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)). "The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced." *Id.* (citing *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995)).

When evaluating the enforceability of a forum selection clause, courts look to three factors: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Id.* (citing *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999)). Regarding the first factor, the party opposing the clause must show fraud in the inclusion of the clause itself—general claims of fraud do not suffice to invalidate the forum selection clause. *Id.* (citing *Preferred Capital, Inc. v. Associates in Urology*, 453 F.3d 718, 722 (6th Cir. 2006)).

The Court finds that Plaintiffs have failed to satisfy the requirements of personal jurisdiction. First, the Court concludes that Plaintiffs have failed to make a *prima facie* showing of jurisdiction. Specifically, Plaintiffs do not allege facts demonstrating that Fundkite's contacts with Ohio are "continuous and systematic" or that Fundkite has sufficient "minimum contacts" such as to establish general or specific jurisdiction respectively.[5] *See Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012) (setting forth requirements for general and specific jurisdiction). Instead, Plaintiffs utilize

---

[4] The Court relies on federal law in evaluating the forum selection clause at issue. *See Wong*, 589 F.3d at 828 ("We therefore hold that in this diversity suit, the enforceability of the forum selection clause is governed by federal law.").

[5] For these reasons, the Court finds that Plaintiffs have failed to demonstrate personal jurisdiction under the due process clause.

impermissible group pleading[6] to merely allege that "Defendants all do business in the State of Ohio" but provide no other information as to the nature of said business. (Doc. No. 1-1 at PageID #8.) Similarly, Plaintiffs do not allege any facts demonstrating that the agreement at issue was entered into or negotiated in Ohio, or otherwise connected to the state. (*See id.* at PageID #8–9.)

Second, even if Plaintiffs had made out a *prima facie* showing, Fundkite has met its burden in rebutting that presumption by way of the forum selection clause. The relevant[7] forum selection clause indicates that "[a]ny suit, action, or proceeding arising out of any disputes between [Fundkite] and [Plaintiffs] … shall if [Fundkite] so elects, be instituted in any court sitting in New York State." (Doc. No. 2-1 at PageID #36.) Moreover, the clause indicates that "[s]hould such proceeding be initiated in any other forum, [Plaintiffs] … waive any right to oppose any motion or application made by [Fundkite] to transfer and/or dismiss such proceeding." (*Id.*) These two provisions make clear that the forum selection clause is mandatory and that the parties have elected New York State as the appropriate forum for any disputes arising between them.

Additionally, Plaintiffs have not filed any opposition and thus waived any argument to the contrary. *See Humphrey v. U.S. Attorney General's Office*, 279 Fed. App'x. 328, 331 (6th Cir. 2008) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion."). And nothing in Plaintiffs' Complaint suggests that the forum selection clause would be invalid by way of fraud, duress, or other

---

[6] *See infra* note 8.

[7] The Court declines to give weight to the "Loan and Credit Line Agreement" attached to Plaintiffs' Complaint because Fundkite is not a party to that agreement. (*See* Doc. No. 1-1 at PageID #14–15.) Rather, that agreement involves Defendant Suncoast Lending which has been dismissed from this action. Indeed, as discussed later in this Opinion, the fact that Plaintiffs engage in impermissible group pleading does not mean that this Court must hold Fundkite to an agreement to which it has not signed. Thus, the Court instead relies upon the contract attached to Fundkite's Motion that was entered into between Fundkite and Plaintiffs. (Doc. No. 2-1 at PageID #29, 36.)

unconscionable means, that courts in New York would ineffectively or unfairly handle the suit, or that New York would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust.  *See Wong*, 589 F.3d at 828.  Although Plaintiffs do allege general claims of "Fraud and Fraudulent Inducement" and "Material Misrepresentation," nothing in Plaintiffs' Complaint suggests that such alleged fraud or misrepresentation occurred specifically with respect to the forum selection clause.  "General claims of fraud [] do not suffice to invalidate the forum selection clause," and Plaintiffs have failed to "show fraud in the inclusion of the clause itself."  *Id.*

The Court therefore finds that Plaintiffs have failed to establish personal jurisdiction over Fundkite in this forum.[8]  Accordingly, Plaintiffs' Complaint must be dismissed.

## V.     Conclusion

For the foregoing reasons, Defendant's Motion is GRANTED.

**IT IS SO ORDERED.**

Dated: July 11, 2025                                     *s/ Pamela A. Barker*
                                                                        PAMELA A. BARKER
                                                                        UNITED STATES DISTRICT JUDGE

---

[8] As a final note, the Court finds that even setting aside the issues of jurisdiction, Plaintiffs' Complaint would still fail nonetheless because Plaintiffs engage in impermissible group pleading.  *See Faloba v. Ultium Cells LLC*, 2025 WL 1042699, at *8 (N.D. Ohio Apr. 8, 2025) (Barker, J.) (citing *Kurek v. Ohio Dep't of Dev. Disabilities*, 2017 WL 1555930, at *6 (N.D. Ohio Jan. 20, 2017)) ("Courts have found complaints that contain 'conclusory allegations of collective, unspecified, and undifferentiated wrongdoing' and that 'vaguely lump[] all defendants together without providing any factual allegations that specify separate acts' to fall short of Rule 8 pleading requirements.").  In this case, Plaintiffs' Complaint only references "Defendants" collectively, and does not even name the individual Defendants other than in the Complaint's caption.  (*See generally* Doc. No. 1.)  This is particularly fatal with respect to Plaintiffs' claims for "Fraud and Fraudulent Inducement" and "Material Misrepresentation," both of which are subject to a heightened pleading standard under Fed. R. Civ. P. Rule 9.  Simply put, Plaintiffs' Complaint is wholly deficient in numerous respects.